781 So.2d 804 (2001)
Bruce APPLEGARTH
v.
TRANSAMERICAN REFINING CORPORATION and/or Transcontinental Refining Corporation and Zurich American Insurance Company.
No. 00-CA-1547.
Court of Appeal of Louisiana, Fifth Circuit.
February 28, 2001.
Writ Denied May 11, 2001.
Harry A. Burglass, Jefferson, Louisiana, for appellant, Bruce Applegarth.
Nelson W. Wagar, III, Vicki A. Turko, Chopin, Wagar, Cole, Richard, Reboul & Kutcher, LLP, Metairie, Louisiana, for appellee, Transamerican Refining Corporation and/or Transcontinental Refining Corporation.
Panel composed of Judges EDWARD A. DUFRESNE, JAMES L. CANNELLA and CLARENCE E. McMANUS.
CANNELLA, Judge.
Plaintiff, Bruce Applegarth, appeals from a summary judgment decreeing him to be a statutory employee of Defendant, Transamerican Refining Corporation and/or Transcontinental Refining Corporation (Transamerican). We affirm.
Plaintiff was employed by Southeast Louisiana Contractors of Norco, Inc. (Southeast) on January 8, 1998, when he allegedly sustained an injury on a commuter bus while he was working at the Transamerican oil refinery located in Norco, Louisiana. Transamerican is the owner and operator of the plant, which refines crude oil and diesel fuel products. The plant, formerly known as Good Hope Refinery, had not been in operation for some years. In 1994, Transamerican entered into a Master Service Agreement (Agreement) with Southeast to provide craftsmen and general laborers to assist in the reconstruction and refurbishment of the refinery.
Pursuant to the Agreement, in 1998, Southeast hired Plaintiff to perform carpentry work at the refinery. His jobs included constructing a retaining wall around the oil tanks and laying cement forms for the installation of pipe racks, which transport the oil and other products *805 through the refinery. The retaining wall is required by law to protect the surrounding area from any spillage and the cement forms were laid to pour foundations for the installation of the pipe racks.
Transamerican provided bus transportation to and from the refinery parking lot and the job site for the workers. On January 8, 1998, Plaintiff boarded the commuter bus at the end of his shift with other workers. He alleges that he sustained injuries when his bus backed into another bus in the parking lot.
On January 5, 1999, Plaintiff filed suit against Transamerican and on July 19, 1999 he filed suit against Zurich American Insurance Company (Zurich), the bus insurer. Defendants filed for summary judgments, claiming that Plaintiff was a statutory employee and that his exclusive remedy is under workers' compensation pursuant to La.R.S. 23:1032 and R.S. 23:1061. A copy of the Agreement was attached to the motions. The Agreement recognizes Transamerican's statutory employer status. Transamerican also provided an affidavit by Gary Karr, its Vice-President, asserting that the work being done by Plaintiff was essential to its ability to generate gasoline and diesel fuel products. Plaintiff responded to the motions, asserting that the work he was performing was not an integral part of or essential to the business of refining oil because this was all new construction and Transamerican was not in operation and producing its products at the time of the accident. The Plaintiff and Zurich filed a Stipulation of Res Judicata on February 11, 2000 that the trial court's judgment on Zurich's Motion For Summary Judgment will be res judicata as to any claim asserted against Transamerican.
The motions were heard on March 29, 2000 and on April 4, 2000 the trial judge rendered judgment in favor of the Defendants. The trial judge determined that Plaintiff was a statutory employee at the time of the alleged injuries under the 1997 amendments to La.R.S. 23:1061 and that the work which Plaintiff was performing was essential to Transamerican's ability to refine crude oil.
On appeal, Plaintiff asserts that the trial judge erred in finding Transamerican to be his statutory employer. He contends that the refinery is not in the business of construction and therefore he rebutted the presumption of statutory employer status created by the agreement.
La.C.C.P. art. 966 provides that a summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that mover is entitled to judgment as a matter of law. Under the 1997 amendment to the article, the summary judgment is favored, but the burden of proof remains with the movant. Hussain v. Enterprise Leasing Co., Inc., 98-806 (La.App. 5th Cir.3/10/99), 735 So.2d 46, 47.
La.R.S. 23:1061, as amended in 1997, provides:
(3) Except in those instances covered by Paragraph (2) of this Subsection, a statutory employer relationship shall not exist between the principal and the contractor's employees, whether they are direct employees or statutory employees, unless there is a written contract between the principal and a contractor which is the employee's immediate employer or his statutory employer, which recognizes the principal as a statutory employer. When the contract recognizes a statutory employer relationship, there shall be a rebuttable presumption of a statutory employer relationship between the principal and the contractor's employees, whether direct or statutory *806 employees. This presumption may be overcome only by showing that the work is not an integral part of or essential to the ability of the principal to generate that individual principal's goods, products, or services.

B. When the principal is liable to pay compensation under this Section, he shall be entitled to indemnity from any person who independently of this Section would have been liable to pay compensation to the employee or his dependent, and shall have a cause of action therefore... {Emphasis added}
Section 2 of Acts 1997, No. 315, § 1, as amended, provides that, "The provisions of this Act are intended to legislatively overrule the statutory employer tests as stated in the Louisiana Supreme Court decisions Berry v. Holston Well Service, 488 So.2d 934 (La.1986) and Kirkland v. Riverwood Intern. USA, Inc., 95-C-1830 (La.9/13/96); 681 So.2d 329".[1]
The question in this case is whether Plaintiff rebutted the presumption of statutory employment raised by the Agreement between Transamerican and Southeast. Plaintiff argues that the amendment to the statute reinstated the integral relationship test set out in Thibodaux v. Sun Oil Co., 218 La. 453, 49 So.2d 852 (1950), and subsequent case law which held that new construction was not an integral part of the principal's business. Plaintiff cites Reeves v. Louisiana and Ark. Ry. Co., 282 So.2d 503 (La.1973), which held that an oil company's engaging a contractor to construct a new petroleum coking unit at its refinery was not part of its business operations.
In Kirkland, the court analyzed the history of the statutory employer concept in a case involving the issue of the effect of the 1989 amendment on the three-tiered Berry v. Holston Well Service, Inc., 488 So.2d 934 (La.1986) analysis and on the jurisprudence preceding Berry. It stated:
At first, Thibodaux's liberal integral relationship test for the statutory employer defense was virtually all encompassing. However, the courts began to recognize some factors which tended to take the contract work outside of the principal's trade, business or occupation, even under the test referred to in Thibodaux. One area that traditionally has been considered outside the principal's business is that of new construction and reconstruction of the principal's buildings and facilities.
This court in Reeves v. Louisiana and Ark. Ry. Co., 282 So.2d 503 (La.1973), held that an oil company's engaging a contractor to construct a new petroleum coking unit at its refinery was not part of its business operations. (FN3) This court reasoned that "it was not Humble's business practice to engage in new construction of this type and magnitude, nor does the record support a conclusion that this type work was customarily done by Humble or other employers similarly situated." Id. at 508. In that case, this court did not mention any "integral relationship" or "essential to business" standard.
Kirkland, 681 So.2d at 333.
The Kirkland court noted that it was not until the 1976 amendment to the statute that the legislature granted immunity to a principal for the first time, codifying the Thibodaux case. As the Kirkland court noted,
During the ten years following the 1976 amendment, this court began to *807 reexamine "the expansive trend taken by the courts in recent years in the so-called statutory employer cases ..." This decade may be characterized as a time of judicial uneasiness with an expansive interpretation of a principal's trade, business or occupation ... In a series of cases, this court began a discernable shift from a liberal to a more restrictive construction of the statutory employer defense ... (citations omitted.)
The restrictive construction of the statutory employment relationship, when used as a defense, culminated in Berry v. Holston Well Service, Inc., 488 So.2d 934 (La.1986). In Berry, this court criticized the "integral relationship" test, noting that this "almost limitless standard yielded inconsistent and often illogical results since almost everything could be said to be integrally related to the principal's trade, business or occupation." Id. at 937. Further, this court declared that it was expressly "abandon[ing] the `integral relation' test" and was adopting a test "more in line with the purpose of sections 1032 and 1061." Id. Accordingly, this court enunciated the following three-tier analysis for determining whether contract work is part of an alleged principal's trade, business or occupation...
In an apparent response to Berry's pronouncement of situations in which the statutory employer defense is absolutely precluded, the Legislature in 1989 amended La.Rev.Stat. 23:1061 to add the following sentence, which directly tracks several of the factors enumerated in Berry, to the first paragraph of Section 1061...
Kirkland, 681 So.2d at 334-335.
Plaintiff asserts that under Reeves, new construction is not considered an integral part of the principal's business. Defendant contends that the 1997 amendment applies to new construction because it is an integral part of or essential to the ability of the refinery to generate its goods, products, or services. Considering the history of the legislative responses to the restriction of statutory employee status by the courts, we conclude that it intended the section to apply to new construction under these circumstances. Constructing a retaining wall around the oil tanks and laying cement forms for the installation of pipe racks is essential to the ability of the refinery to generate its goods, products, or services. Thus, because the Plaintiff failed to rebut the presumption of statutory employee status raised by the agreement between Transamerican and Southeast, we find that the trial judge did not err in granting the motion for summary judgment.
Accordingly, the summary judgment in favor of Defendant is hereby affirmed.
Costs of appeal are to be paid by Plaintiff.
AFFIRMED.
NOTES
[1] Section 3 of Acts 1997, No. 315, provides that the provisions of the Act "shall be applied prospectively only and shall not apply to any cause of action arising prior to the effective date of this Act." The effective date of the amendment was June 17, 1997.