635 So.2d 758 (1994)
WOODROW WILSON CONSTRUCTION COMPANY, INC.,
v.
MMR-RADON CONSTRUCTORS, INC.
No. 93 CA 2346.
Court of Appeal of Louisiana, First Circuit.
April 8, 1994.
George Anding, Jr., John McLindon, Baton Rouge, for plaintiff-appellant Woodrow Wilson Const. Co., Inc.
Craig Kaster, David Gunn, Baton Rouge, for defendant-appellee MMR-Radon Constructors, Inc.
Before LOTTINGER, C.J., and CRAIN and LeBLANC, JJ.
LOTTINGER, Chief Judge.

FACTS
Plaintiff, Woodrow Wilson Construction Company, Inc. (Wilson), is the general contractor for construction of the Federal Building in Baton Rouge, Louisiana. On September 3, 1991, defendant, MMR-Radon (Radon), and Wilson entered into a subcontract, under which Radon was to perform certain site work, earth work, and asphalt paving.
The subcontract between Wilson and Radon provides that all claims and disputes relating to the agreement or breach thereof shall be decided by arbitration. However, subparagraph 15.7 contains the following exception:
This agreement to arbitrate shall not apply to any claim:
(b) asserted by the Subcontractor against the Contractor if the Contractor asserts said claim, either in whole or part, against the Owner and the contract between the Contractor and owner does not provide for binding arbitration, or does so provide but the two arbitration proceedings are not consolidated, or the Contractor and Owner have not subsequently agreed to arbitrate said claim, in either case of which the parties hereto shall so notify each other either before or after demand for arbitration is made.
The contract between Wilson and the owner, General Services Administration (GSA), does not provide for arbitration but rather provides that all disputes arising under or relating to the contract shall be resolved under the Contract Disputes Act of 1978.
*759 Pursuant to the subcontract, Radon began performing site work and submitting applications for payment. After Radon began experiencing an increase in the scope of work, it submitted a request for change order on November 18, 1991. The change order stated that additional labor and materials necessary to complete the project would cost $114,653.00.[1]
As a result of non-payment for work performed under the original contract, Radon left the project and filed a demand for arbitration against Wilson on February 4, 1992. In its specification of issues in dispute, Radon asserts that under the original contract, it is owed $52,127.40 in progress payments and $9,095.81 in retainage. Additionally, Radon asserts that it is owed $42,612.50 for labor and materials in connection with extra work performed with regard to the November 18, 1991 claim.

PROCEDURAL HISTORY
On January 21, 1993, Wilson filed a petition seeking declaratory judgment and a stay of the pending arbitration proceedings. In the petition, Wilson asserts that Radon's claim is not subject to arbitration because Wilson will assert all or a portion of the claim against the owner and the contract between Wilson and the owner does not provide for arbitration.
After the trial judge refused to stay the arbitration proceedings, Wilson filed supervisory writs. We granted the writ, ordering the trial court to stay the arbitration proceedings pending a hearing on the merits. Following the hearing, the trial judge concluded that Wilson did not have a "meritorious" dispute with GSA and, therefore, Radon's claim must be arbitrated.
Wilson filed this appeal and supervisory writs again seeking to stay the arbitration proceedings pending appeal. We denied the writ, and although the Louisiana Supreme Court afforded Wilson an opportunity to seek a stay from the court of appeal 629 So.2d 421, no further action has been taken regarding the stay. We now address the issue raised on appeal by Wilson: whether the trial court erred in ordering the parties to proceed with arbitration.

DISCUSSION
Courts are bound to give legal effect to written contracts according to the true intent of the parties; and this intent is to be determined by the words of the contract, when they are clear, explicit, and lead to no absurd consequences. La.Civ.Code Arts. 2045, 2046; Leenerts Farms, Inc. v. Rogers, 421 So.2d 216, 218 (La.1982). These general principles of contract law "govern the question of who is bound by an arbitration agreement, and a party cannot be required to submit to arbitration any dispute that he has not agreed to submit." Ciaccio v. Cazayoux, 519 So.2d 799, 804 (La.App. 1st Cir.1987).
The subcontract between Wilson and Radon clearly provides that the arbitration provisions of the contract do not apply if the contractor asserts the claim against the owner and the contract between the contractor and owner does not provide for arbitration. There is no dispute that the contract between Wilson and GSA does not provide for binding arbitration. Thus, the sole question is whether Wilson "asserts the claim, either in whole or part, against the owner."
Wilson contends that it asserted Radon's claim against GSA in a letter dated March 24, 1993. The opening paragraph of this letter states, "[w]e hereby submit our claim for $114,653.00 as submitted by ... RADON Constructors, Inc., for additional work...." The letter further states that "Radon, through Woodrow Wilson Construction Company, Inc., will be prepared to show back-up and justification of the quantities and pricing used in their claim for extra compensation." Wilson attached Radon's November 18, 1991, change order which states that an additional $114,653.00 would be necessary for Radon to complete the project.
According to the contract between Wilson and GSA, "a written demand or written assertion by the Contractor seeking the payment *760 of money exceeding $50,000 is not a claim under the Act until certified as required by subparagraph (d)(2) below." (Emphasis Added.) The requirements for certifying a claim under subparagraph (d)(2) are as follows:
(2) For Contractor claims exceeding $50,000, the Contractor shall submit with the claim a certification that
(i) The claim is made in good faith:
(ii) Supporting data are accurate and complete to the best of the Contractor's knowledge and belief; and
(iii) The amount requested accurately reflects the contract adjustment for which the Contractor believes the Government is liable.

(Emphasis Added.)
Wilson's March 24, 1993, letter does not meet the requirements of subparagraph (d)(2) and therefore cannot be considered a claim under Wilson and GSA's contract. The only supporting data submitted by Wilson was the November 18, 1991, change order which reflects the additional costs necessary for completion of the project. When Wilson submitted the "claim" to GSA, it was aware that Radon had left the project without completing the work. Through the testimony of Wilson's vice-president, David H. Broussard, Wilson admitted that the "claim" needed to be revised and that the "claim" was only "partially correct" because Radon did not complete the work. Clearly, Radon was not entitled to the entire sum outlined in the November 18 change order.
Considering the testimony of Mr. Broussard and the foregoing facts, it is clear that upon submitting the "claim" to GSA, Wilson was aware that the supporting data did not accurately represent the claim nor did it reflect the amount for which the government could be liable. Wilson's March 24, 1993, letter did not meet the certification requirements contained in subparagraph (d)(2). Therefore, according to the terms of Wilson and GSA's contract, there was no claim, meritorious or otherwise, asserted against GSA.
Because we find that Wilson did not assert a claim against the owner, the exception to arbitration clause contained in subsection 15.7 of the subcontract is inapplicable. Therefore, the subcontract's general arbitration provisions apply and Radon's claim against Wilson is subject to arbitration.

DECREE
For the above and foregoing reasons, we affirm the decision of the trial court and assess the costs of this appeal against Wilson.
AFFIRMED.
NOTES
[1] Radon's original bid totaled $118,000.00. After recalculating the total quantities of fill, excavation and haul-off to complete the project, Radon requested an additional $114,653.00.