STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2023 CA 0706

BROWN & ROOT INDUSTRIAL SERVICES, LLC

VERSUS

ANTHONY E. FARRIS, JR., KEVIN D. STEED, AND FIDES
CONSULTING, LLC

Judgment Rendered: **JUN 2 7 2024**

* * * * *

On Appeal from the
19th Judicial District Court
In and for the Parish of East Baton Rouge
State of Louisiana
Trial Court No. 705222

Honorable Donald R. Johnson, Judge Presiding

* * * * *

Eric R. Miller
Christine S. Keenan
Elizabeth B. Bloch
Baton Rouge, LA
-and-
Mary Jo L. Roberts
Alexander C. Landin
New Orleans, LA

Attorneys for Plaintiffs-Appellants,
Brown & Root Industrial Services,
LLC & Bris Engineering, LLC


John A. Moore
Edward D. Hughes
Jonathan A. Moore
Savannah W. Smith
Preston J. Castille, Jr.
Baton Rouge, LA

Attorneys for Defendants-Appellees,
Anthony E. Farris, Jr., Kevin D. Steed,
Jaeson M. Brown, Jeffrey M. Hebert,
Robert A. Huval, Mitchell M. Morgan,
David E. Sterken, and Fides Consulting,
LLC

* * * * *

BEFORE: McCLENDON, HESTER, AND MILLER, JJ.

**HESTER, J.**

This is an appeal from the trial court's grant of partial summary judgment, finding the non-solicitation of employees provision of a separation agreement violative of established public policy. For the reasons that follow, we affirm the judgment of the trial court.

## FACTS AND PROCEDURAL HISTORY

In September of 2020, Kevin Steed learned that his employment with BRIS Engineering, LLC ("BRIS Engineering") would be terminated.[1] On October 1, 2020, Steed and Brown & Root Industrial Services, LLC ("BRIS") signed a separation agreement and release ("Agreement"). The stated reasons for the Agreement were as follows:

1.  Your employment with the Company will end on October 16, 2020[;]

2.  On the next payroll date following October 12, 2020, the Company will pay you all wages earned through October 16, 2020, including payment for any accrued but unused vacation; and

3.  The Company will provide you with **additional** severance payments and benefits below, but only if you sign this Release to promise not to bring legal action against the Company with respect to your employment or termination of employment with the Company[.]

The term "Company" included BRIS, "its parent, subsidiary and affiliated entities."

Thereafter, the Agreement provided a series of promises to which the "Company" and Steed agreed. "**Promise Number 1**" was BRIS's promise to pay Steed a lump sum severance payment representing twelve weeks of salary, equivalent to the gross amount of $75,000.00 after Steed signed the Agreement. "**Promise Number 9**" provided that, in exchange for the sums paid to Steed pursuant to Promise No. 1, Steed would not solicit, encourage, or cause any "Protected

---

[1] According to the Third Supplemental and Amended Petition, BRIS Engineering is a wholly owned subsidiary of Brown & Root Industrial Services, LLC, which provides a full range of industrial services to chemical/petrochemical, refining and other plant sites and facilities.

Employee" to terminate his or her employment with the "Company" and accept employment at a competitor organization at which Steed works or has an ownership interest. "Protected Employee" in Promise Number 9 was defined as "any individual employed by the Company within the last twelve (12) months of [Steed's] employment with the Company."

Steed began working for CSRS, Inc. ("CSRS") in December of 2020 and began working for Fides Consulting, LLC ("Fides Consulting") in February of the following year. In November of 2020 and February of 2021, a number of BRIS Engineering employees separated from the company, including a senior consultant, a piping design manager, a project controls manager, an "E&I Manager," a senior consulting engineer, and a project management manager. Subsequently, these former employees of BRIS Engineering began working for Fides Consulting.

BRIS filed suit on March 3, 2021, naming as defendants, Anthony E. Farris, Jr., Steed, and Fides Consulting, initially alleging civil conspiracy and breach of contract, which included claims against Steed for violations of Promise Number 9. BRIS alleged that Steed recruited, attempted to persuade, and hired protected employees in violation of the Agreement. Thereafter, BRIS filed three subsequent supplemental and amended petitions adding parties as well as adding additional claims for relief. In the second supplemental and amended petition, BRIS Engineering was added as a plaintiff, and former employees of BRIS Engineering were named as defendants. In the third supplemental and amended petition, BRIS and BRIS Engineering alleged that the Agreement signed by Steed is a valid and enforceable contract and that the Agreement prohibited Steed from soliciting their employees. Particularly, BRIS and BRIS Engineering alleged that Steed violated the Agreement by "directly or indirectly soliciting or hiring employees of BRIS Engineering, including having direct solicitation or hiring through employee(s),

3

officer(s), director(s), agent(s), or those acting in concert for CSRS and/or Fides Consulting LLC in soliciting and hiring employees of BRIS Engineering."

On June 13, 2022, Steed moved for partial summary judgment to dismiss BRIS and BRIS Engineering's claims against him for breach of Promise Number 9 – the employee non-solicitation provision of the Agreement – asserting that the provision was invalid and unenforceable.[2] Specifically, Steed asserted that the policy principles underlying La. R.S. 23:921, which prohibits contracts, agreements, or provisions thereof from restraining a person from exercising a lawful possession, trade, or business of any kind, except as provided for in the statute, apply by analogy to the non-solicitation of employee clause in Promise Number 9 of the Agreement. Steed noted that Promise Number 9 is not reasonably limited in scope and is not reasonably limited in duration. In support of his motion for summary judgment, Steed attached BRIS and BRIS Engineering's third supplemental and amended petition; the affidavit of Steed, which included the Agreement; and the deposition of Andy Dupuy, the President and Chief Executive Officer of BRIS.

BRIS and BRIS Engineering opposed the motion, asserting that the employee non-solicitation provision of the Agreement was valid and enforceable. BRIS and BRIS Engineering did not object to the recitation of the uncontested material facts as provided by Steed.[3] BRIS and BRIS Engineering argued that Promise Number 9 was clear as written, did not lead to absurd consequences, and no further

---

[2] Louisiana Code of Civil Procedure article 966 was amended by La. Acts 2023, No. 317, § 1; La. Acts 2023, No. 368, § 1, effective August 1, 2023, which amendments were substantive and cannot be applied retroactively. See La. Code Civ. P. art. 966, Comments – 2023, Comment (f); **Ricketson v. McKenzie**, 2023-0314 (La. App. 1st Cir. 10/4/23), __ So.3d __, __, 2023 WL 7037495, *4. Therefore, we apply the version of La. Code Civ. P. art. 966 in effect at the time the motion for summary judgment was submitted and heard.

[3] BRIS and BRIS Engineering did list a singular contested fact: "Kevin Steed's Separation Agreement & Release includes an agreement not to solicit Plaintiffs' employees and is not a non-competition agreement." However, Steed expressly did not dispute that Promise Number 9 is an employee non-solicitation agreement and correctly noted that whether or not Promise Number 9 is a non-competition agreement as described in in the provisions of La. R.S. 23:921 is a question of law.

interpretation was required. Moreover, BRIS and BRIS Engineering argued that even if Promise Number 9 was found to be vague or ambiguous, Promise Number 14 of the Agreement provided that the court has authority to reform the Agreement. According to Promise Number 14, "[s]hould a court rule that any part of this Release is invalid under local, state or federal law, [the parties] agree that the court can reform the offending part to render it enforceable and that all other parts will remain in full force and effect." In support of their opposition, BRIS and BRIS Engineering attached as exhibits an unverified copy of the Agreement; excerpts from the deposition of Steed; excerpts from the deposition of Katie Richardson; and BRIS and BRIS Engineering's unverified discovery responses.[4]

Steed filed a reply memorandum on August 17, 2022, maintaining that employee non-solicitation provisions like the one in Promise Number 9 are to be interpreted in accordance with the public policy considerations similar to those underlying La. R.S. 23:921. Steed maintained that employee non-solicitation provisions must be reasonably limited in both scope and duration, citing to **Bell v. Rimkus Consulting Group, Inc. of Louisiana**, 2008-491 (La. App. 5th Cir.

---

[4] We note that no objections were made regarding the documents attached to BRIS and BRIS Engineering's opposition. Pursuant to La. Code Civ. P. art. 966(D)(2), this court "shall consider any documents to which no objection is made" to determine, *de novo*, if any evidentiary value should be given to the documents. See **Pottinger v. Price**, 2019-0183 (La. App. 1st Cir. 10/23/19), 289 So.3d 1047, 1053. "The only documents that may be filed in support of or in opposition to the motion are pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions." La. Code Civ. P. art. 966(A)(4). The copy of the Agreement attached to the opposition is not a document permitted to be filed on opposition to a motion for summary judgment unless properly authenticated through an affidavit or deposition to which it is attached and lacks evidentiary value. See **Successions of Millet**, 2021-0355 (La. App. 1st Cir. 12/22/21), 340 So.3d 252, 257; see also La. Code Civ. P. art. 966, comments—2015, comment (c). However, the Agreement was properly authenticated and filed in support of Steed's motion for summary judgment.

Additionally, answers to interrogatories that are neither made under oath nor an attestation made before a notary public that the interrogatories were answered under oath, are not competent summary judgment evidence. **Dowdle v. State Through Dep't of Culture, Recreation, & Tourism**, 2018-878 (La. App. 3d Cir. 5/15/19), 272 So.3d 77, 83. As noted in La. Code Civ. P. art. 966, comments—2015, comment (c), "[La. Code Civ. P. art.] 1458 requires that interrogatories be answered under oath, and only answers that are made under oath may be filed in support of or in opposition to a motion for summary judgment." Accordingly, the excerpts of answers to interrogatories attached to plaintiffs' motion are not competent summary judgment evidence.

1/13/09), 8 So.3d 64, <u>writ denied</u>, 2009-0329 (La. 4/24/09), 7 So.3d 1198 and **CDI Corp. v. Hough**, 2008-0218 (La. App. 1st Cir. 3/27/09), 9 So.3d 282, 292.

The trial court conducted a hearing on August 22, 2022, and took the matter under advisement. On August 26, 2022, the trial court signed a judgment granting Steed's motion for partial summary judgment and dismissing with prejudice BRIS and BRIS Engineering's claims for breach of contract against Steed arising out of the Agreement.[5]

On October 11, 2022, BRIS and BRIS Engineering filed a motion for devolutive appeal of the August 26, 2022 judgment. On appeal, BRIS and BRIS Engineering contend the trial court erred as follows: (1) in applying La. R.S. 23:921 and related jurisprudence to the employee non-solicitation provision in the Agreement; (2) by failing to apply the rules of contractual interpretation; (3) by not reforming any offending provisions of the Agreement; and (4) in the alternative, by granting the summary judgment because genuine issues of material fact remained.[6]

## LAW AND ANALYSIS

A ruling on a motion for summary judgment is reviewed under a *de novo* standard, with the appellate court using the same criteria that govern the trial court's determination of whether summary judgment is appropriate, *i.e.*, whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law. **Latour v. Brock**, 2023-00262 (La. 6/21/23), 362 So.3d 405, 407-08. A motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to

---

[5] The judgment was certified as final in accordance with La. C.C.P. art. 1915(B). Under the facts of this case, we find the trial court's certification was proper. **R.J. Messinger, Inc. v. Rosenblum**, 2004-1664 (La. 3/2/05), 894 So.2d 1113, 1122.

[6] We do not find merit in BRIS and BRIS Engineering's last assignment of error. There are no genuine issues of material fact in dispute.

material fact and that the mover is entitled to judgment as a matter of law. La. Code Civ. P. art. 966(A)(3).

In the present matter, there are no genuine issues of material fact. When parties are bound by a valid contract and material facts are not in conflict, the contract's application to the case is a matter of law and summary judgment would be appropriate. **Boh Bros. Const. Co., L.L.C. v. State ex rel. Dep't of Transp. & Dev.**, 2008-1793 (La. App. 1st Cir. 3/27/09), 9 So.3d 982, 984, writ denied, 2009-0856 (La. 6/5/09), 9 So.3d 870.

Contracts have the effect of law between the parties, and courts are obligated to give legal effect to such contracts according to the true intent of the parties. La. Civ. Code arts. 1983 and 2045; **ASG Techs. Grp., Inc. v. Office of Tech. Servs.**, 2021-1046 (La. App. 1st Cir. 6/30/22), 344 So.3d 136, 150. This intent is to be determined by the words and provisions of the contract when they are clear, explicit, and lead to no absurd consequences. La. Civ. Code art. 2046; **Sanders v. Ashland Oil, Inc.**, 96-1751 (La. App. 1st Cir. 6/20/97), 696 So.2d 1031, 1036, writ denied, 97-1911 (La. 10/31/97), 703 So.2d 29, citing **Woodrow Wilson Const. Co., Inc. v. MMR-Radon Constructors, Inc.**, 93-2346 (La. App. 1st Cir. 4/8/94), 635 So.2d 758, 759, writ denied, 94-1206 (La. 7/1/94), 639 So.2d 1167. A contract must be interpreted within its "four corners" whenever the words of the contract are clear, explicit, and lead to no absurd consequences. When those conditions are met, a court is prohibited from taking parol evidence to explain or contradict the clear meaning of the contract. **Neill Corp. v. Shutt**, 2020-0269 (La. App. 1st Cir. 1/25/21), 319 So.3d 872, 878.

Steed's motion for summary judgment presents the legal question of whether Promise Number 9 is valid and enforceable. "**Promise Number 9**" provides as follows:

7

In exchange for the sums paid to you in Promise Number 1 above, you agree that you will not, either directly or indirectly, solicit, encourage or cause any "Protected Employee" (as such term is defined below) to terminate his or her employment with the Company and accept employment at a competitor organization at which you work or have an ownership interest. For purposes of this Promise, the term "Protected Employee" is defined as any individual employed by the Company within the last twelve (12) months of your employment with the Company. You acknowledge and agree that a breach of this Promise will cause irreparable harm to the Company and will cause undue hardship for which the remedy at law for damages will be inadequate. Therefore, in the event of a breach or anticipatory breach of this Promise, you agree that the Company shall be entitled to seek the following particular forms of relief, in addition to remedies otherwise available to it at law or equity: (1) injunctive relief, and (2) damages for the loss sustained and the profit of which the Company will be deprived, as well as reasonable attorney's fees and costs incurred by the Company to enforce this Promise.

Louisiana has had a strong public policy disfavoring non-competition agreements between employers and employees. **SWAT 24 Shreveport Bossier, Inc. v. Bond**, 2000-1695 (La. 6/29/01), 808 So.2d 294, 298. This public policy is embodied in La. R.S. 23:921, Louisiana's non-competition statute. However, a contract by a former employee not to solicit employees of his former employer, like Promise Number 9, is not governed by La. R.S. 23:921.[7] See **CDI Corp.**, 9 So.3d 282; **Bell**, 8 So.3d 64; and **Smith, Barney, Harris Upham & Co., Inc. v. Robinson**, 12 F.3d 515 (5th Cir. 1994). Nevertheless, a review of the limited cases analyzing employee non-solicitation provisions reflects that courts have required that these non-solicitation provisions be reasonable in scope and duration, which we also find

---

[7] Louisiana Revised Statutes 23:921 provides, in pertinent part, as follows:

(A). (1) Every contract or agreement, or provision thereof, by which anyone is restrained from exercising a lawful profession, trade, or business of any kind, except as provided in this Section, shall be null and void. However, every contract or agreement, or provision thereof, which meets the exceptions as provided in this Section, shall be enforceable.

...

C. Any person, including a corporation and the individual shareholders of such corporation, who is employed as an agent, servant, or employee may agree with his employer to refrain from carrying on or engaging in a business similar to that of the employer and/or from soliciting customers of the employer within a specified parish or parishes, municipality or municipalities, or parts thereof, so long as the employer carries on a like business therein, not to exceed a period of two years from termination of employment. ...

to be a necessary requirement and therefore applicable to our analysis of Promise Number 9.[8]

In **Smith, Barney, Harris Upham & Co.**, 12 F.3d 515, the United States Fifth Circuit Court of Appeals considered an employee non-solicitation provision, which provided as follows:

> [i]n consideration of payment of the 1993 Incentive Compensation to me, I agree that should my employment with Smith Barney terminate for any reason and I become employed at a competitor organization I will not for a one (1) year period directly or indirectly solicit or induce any Smith Barney employee to resign from either (a) the Smith Barney branch office at which I worked; or (b) any other Smith Barney branch office within a fifty (50) mile radius of the competitor organization's office at which I work, in order for that employee to accept employment at the competitor organization at which I work.

**Id.** at 517. After determining that the agreement did not possess the attributes of an agreement prohibited by La. R.S. 23:921 and not governed thereby, the court then had to "decide only whether the Agreement [was] otherwise enforceable." **Id.** at 519.

While the provision clearly provided a one-year durational limit for enforcement, the former employee argued the provision was unenforceable due to the failure to specify the commencement date for the period he was barred from soliciting employees. However, the agreement expressly stated that "should my employment with Smith Barney terminate for any reason and I become employed at a competitor organization I will not for a one (1) year period directly or indirectly solicit or induce any Smith Barney employee to resign..." **Smith, Barney, Harris Upham & Co., Inc.**, 12 F.3d at 520. Acknowledging that the employee non-solicitation provision in the agreement did not state precisely when the one-year period began, the court was "satisfied" that it may only be interpreted to fix the beginning of the one-year period on the date of the former employee's termination.

---

[8] To the extent that BRIS and BRIS Engineering allege error in the trial court's reliance on these cases, we do not agree and fail to find merit in BRIS and BRIS Engineering's first assignment of error.

**Id.** Further supporting its ruling, the court noted that Smith Barney sought to prevent its former employee from soliciting its employees during the time it was most vulnerable to employee raiding by the former employee: the one-year period immediately following his termination of employment with Smith Barney. **Id.** Accordingly, the court implicitly determined that the one-year period was reasonable.

After concluding that an employee non-solicitation provision was not governed by La. R.S. 23:921, this court in **CDI Corp.**, 9 So.3d 282, analyzed the enforceability of the provision.[9] The provision at issue provided as follows:

> 4. *Non–Solicitation Provisions.* For a period of twelve (12) months following the termination of your employment with the Company, you will not:
>
> (a) Directly or indirectly hire or cause to be hired, or solicit, interfere with or attempt to entice away from the Company, any individual who was an employee of the Company within six (6) months prior to such contact, solicitation, interference or enticement....

**Id.** at 284. In finding that the "agreement [was] *reasonable in scope and duration,*" the court specifically stated that "[t]he agreement merely restricts those whom he can recruit for his new company for a period of twelve months following his termination from CDI Corporation." **Id.** at 292. (Emphasis added.)

In **Bell**, 8 So.3d 64, the Fifth Circuit Court of Appeal found an employee non-solicitation provision to be violative of public policy. While concluding that the provision was not specifically covered by Louisiana's non-competition statute, La. R.S. 23:921, the court stated that "by analogy to the law interpreting that statute, and under general contract rules, the provision is against public policy as it is written." **Id.** at 69. The applicable provision in **Bell** contained a durational provision that

---

[9] In **Neill Corp.**, 319 So.3d at 880, this court also concluded that a "Non-Raiding Agreement," prohibiting former employees of the plaintiff from soliciting current employees of the plaintiff for a period of two years following their termination, was not restricted by La. R.S. 23:921. However, no further analysis of the provision was provided, as the application of the non-raiding provision was not directly at issue.

10

properly narrowed the scope, but did not contain a provision as to the duration of enforceability. The provision provided as follows:

> 8. **Covenant Not to Compete.**
>
> b. Employee agrees that after termination of employment with the Company, he will not, directly or indirectly, solicit, employ or in any other fashion, hire persons who are, or were, employees, officers or agents of the Company, until such person has terminated his employment with the Company for a period of eighteen (18) months[.]

**Id**. at 68.

Declining to find the provision ambiguous, the Fifth Circuit concluded that the provision was against public policy and stated:

> The non-solicitation of employee clause *specifically* states that Bell is prohibited from hiring the Defendant's employees or ex-employees for 18 months *from the date that the employee ends his employment with the* Defendants. It states: "until *such person* has terminated his employment with the Company for a period of eighteen months."

**Bell**, 8 So.3d at 69. (Emphasis in original.) The court further stated that it was "absolutely unreasonable" to prohibit Bell forever from soliciting or hiring his former employer's employees or ex-employees for eighteen months post separation from the former employer. The court held that the provision was invalid and not enforceable because it did not have a reasonable time limit on the prohibition as it related to Bell's action in soliciting employees. **Id**. Accordingly, the court found that Bell did not breach the provision prohibiting the solicitation of ex-employees.

In view of the relevant caselaw, we must determine whether the employee non-solicitation provision of Promise Number 9 is reasonable in scope and duration. We first look to the durational limits of Promise Number 9. The singular reference to duration or a time period applies to the particular employees Steed is prohibited from soliciting, *i.e.*, "any individual employed by the Company within the last twelve (12) months of your employment with the Company." Promise Number 9 does not provide any durational limit for the time period Steed is prohibited from soliciting certain employees from the "Company." Despite the relatively narrow

11

scope of those who Steed is prohibited from recruiting, soliciting and hiring, he is perpetually barred from soliciting, encouraging, or causing that particular subset of people from terminating their employment with the "Company."

Returning to the precepts of contractual interpretation, we look to the words and provisions of the Agreement in order to determine the intent of the parties. La. Civ. Code art. 2046; **Sanders**, 696 So.2d at 1036. Interpreting this Agreement within its "four corners," we do not find any intent amongst the parties to limit any provision thereof to a one-year period (or otherwise) as urged by BRIS and BRIS Engineering. See **Neill Corp.**, 319 So.3d at 878. In fact, the entire Agreement is devoid of any language, wording, or indication as to the duration of the terms of the contract.[10] The majority of the promises contained in the Agreement, including Promise Number 9, imply an infinite duration, *e.g.*, the promises not to file a lawsuit or other grievance against the "Company" and the agreement not to make any disparaging statements to current former or prospective customers, contractors, vendors, shareholders, or employees of the "Company." Applying the rules of contractual interpretation, the term of Promise Number 9 is perpetual. Accordingly, we do not find merit in BRIS and BRIS Engineering's assignment of error number two.

Promise Number 9 is unlike the employee non-solicitation provisions found to be reasonable in scope and duration in **Smith, Barney, Harris Upham & Co., Inc.**, 12 F.3d at 520, and **CDI Corp.**, 9 So.3d at 292, both of which contained terms expressly limited to one year. Here, the applicable employee non-solicitation provision fails to contain any durational limit for the prohibition on soliciting,

---

[10] We note a singular exception in Promise Number 5, in which Steed was obligated "for a period of three (3) weeks[] until October 16, 2020" to cooperate with the "Company" in connection with the transition of his duties. Yet, additional agreements within Promise Number 5 imply an infinite duration, including the obligation of Steed to assist and cooperate with the "Company" in the defense and prosecution of any claim that may be made by or against the "Company" or in connection with any ongoing or future investigation or dispute or claim of any kind involving the "Company."

encouraging, or causing any "Protected Employee" to terminate his or her employment with the "Company" and accept employment at a competitor organization at which Steed works or has an ownership interest. This is similar to the provision found to be invalid and unenforceable in **Bell**. Accordingly, we find Promise Number 9 in the Agreement to be unreasonable in duration, as it imposes a permanent inability to recruit, hire, or solicit even a small subset of employees. Promise Number 9 is unenforceable as written.

Notwithstanding our determination of the unenforceability of Promise Number 9 as written, the Agreement provides that "[s]hould a court rule that any part of this Release in invalid under local, state or federal law, [the parties] agree that the court can reform the offending part to render it enforceable and that all other parts will remain in full force and effect." Courts evaluating contracts covered by La. R.S. 23:921 that included reformation clauses have declined to save invalid non-competition and non-compete agreements, at least with respect to geographical requirements of La. R.S. 23:921. This court in **Vartech Sys., Inc. v. Hayden**, 2005-2499 (La. App. 1st Cir. 12/20/06), 951 So.2d 247, 260-61, citing **Water Processing Techs., Inc. v. Ridgeway**, 618 So.2d 533, 536 (La. App. 4th Cir. 1993), declined to reform the invalid non-solicitation clause in favor of the employer due to its failure to provide specific geographical limitations notwithstanding that the limits could be inferred. In **Summit Inst. for Pulmonary Med. & Rehab., Inc. v. Prouty**, 29,829 (La. App. 2d Cir. 4/9/97), 691 So.2d 1384, 1389, writ denied, 97-1320 (La. 9/26/97), 701 So.2d 983, the Second Circuit also declined to reform a non-solicitation contract's ambiguously broad provision to the outer-limits of the law.

While we acknowledge that the employee non-solicitation provision at issue here is not subject to La. R.S. 23:921 and not expressly disfavored by law, reform of this Agreement would require fashioning a reasonable term for Promise Number 9 where the entire Agreement is purposely silent as to any term. Under these

13

circumstances, we decline to reform Promise Number 9 under the facts and circumstances of this case. Therefore, we do not find merit in BRIS and BRIS Engineering's assignment of error number three.[11]

## CONCLUSION

In light of the above and foregoing, we affirm the trial court's August 26, 2022 judgment, granting Kevin Steed's partial motion for summary judgment. All costs of this appeal are to be borne by Brown & Root Industrial Services, LLC and BRIS Engineering, LLC.

**AFFIRMED.**

---

[11] In so concluding, we decline to address the other issues raised in Steed's summary judgment regarding whether Promise Number 9 was reasonably limited in scope when it failed to define "competitor organizations" or provide specific companies included in the term "Company".